**THE WAND LAW FIRM, P.C.**
Aubry Wand (SBN 281207)
100 Oceangate, Suite 1200
Long Beach, CA 90802
Telephone: (310) 590-4503
Email: awand@wandlawfirm.com

**TREEHOUSE LAW, LLP**
Benjamin Heikali (SBN 307466)
Ruhandy Glezakos (SBN 307743)
Joshua Nassir (SBN 318344)
2121 Avenue of the Stars, Suite 2580
Los Angeles, CA 90067
Telephone: (310) 751-5948
Email: bheikali@treehouselaw.com
        rglezakos@treehouselaw.com
        jnassir@treehouselaw.com

*Attorneys for Plaintiff and the Putative Classes*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA GUERRERO, on behalf of herself and all others similarly situated,<br><br>       Plaintiff,<br><br>    v.<br><br>LUXCLUB, INC., a New York corporation; BOLD ADVENTURE LLC, a Delaware limited liability company; MARGARET MOSSERI, an individual; and DOES 1 through 10, inclusive,<br><br>       Defendants. | Case No.: 1:24-cv-00721-JLT-CDB<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1. Violation of California False Advertising Law<br>2. Violation of California Unfair Competition Law<br>3. Violation of California Consumers Legal Remedies Act<br>4. Breach of Express Warranty (Cal. Com. Code § 2313)<br>5. Breach of Implied Warranty (Cal. Com. Code § 2314)<br>6. Intentional Misrepresentation<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Andrea Guerrero ("Plaintiff"), on behalf of herself and all others similarly situated, brings this class action against Defendant LuxClub, Inc. ("LuxClub"), Bold Adventure LLC ("Bold Adventure"), Margaret Mosseri ("Mosseri") (collectively, "Defendants"), and Does 1 through 10, based on Defendants' misleading business practices with respect to the labeling, marketing, and sale of its LuxClub "Bamboo" bed sheets (the "Products"). Plaintiff makes the following allegations based on the investigation of her counsel, and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on her personal knowledge.

## **INTRODUCTION**

1.     During the statute of limitations period, Defendants have marketed, advertised, and labeled the Products with representations that lead reasonable consumers to believe that they are bamboo bedsheets and are eco-friendly.

2.     Specifically, the Products were advertised online and in-store as "Bamboo" bed sheets (the "*Bamboo Representation*") and "Eco-Friendly" (the "*Eco-Friendly Representation*"). These emphatic representations were bolstered by bamboo imagery used on the e-commerce websites of Luxclub and other major retailers such as Amazon that sold the Products, and on the Products' packaging, and in related marketing materials.

3.     Reasonable consumers take the *Bamboo Representation* and the *Eco-Friendly Representation* at face value—i.e., they believe the Products are bamboo sheets that are eco-friendly. This belief is important to consumers' purchasing decisions because bamboo is widely known to be hypoallergenic, antimicrobial, antibacterial, and environmentally friendly, and consumers care about purchasing eco-friendly products.

4.     Despite Defendants' unqualified claims that the Products were "bamboo" sheets, the Products are made of viscose (also called rayon), a fabric derived from highly processed bamboo, but which does not contain bamboo in the final fabric, and microfiber, a synthetic fiber made from polyester. Because the Products are not made from bamboo, and they are not eco-friendly, the marketing of the Products was false and misleading.

5.     While Plaintiff has notified LuxClub of its conduct, LuxClub has failed to remedy its conduct and has failed to reimburse Plaintiff or putative class members. Rather, after receiving

Plaintiff's notice under the Consumer Legal Remedies Act, LuxClub removed the word "Bamboo" from some of the Products' marketing and advertising on Amazon.com and its website. However, LuxClub continues to market and advertise the Products as "Eco Friendly," even though the manufacturing process to make viscose/rayon from bamboo and microfiber is environmentally harmful.

6.    Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased the falsely and deceptively marketed Products during the statute of limitations period, for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, breach of express and implied warranty (Cal. Com. Code §§ 2313-2314), and intentional misrepresentation (i.e., common law fraud).

<u>**JURISDICTION AND VENUE**</u>

7.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and there is diversity of citizenship between some members of the proposed Classes and Defendant.

8.    This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts with the State of California, and/or otherwise intentionally avail themselves of State of California, through the promotion, marketing, and sale of the Products in this State (including in this District) to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Specifically, Plaintiff purchased the Products in this District.

///

///

///

**PLAINTIFF**

10.    Plaintiff is a citizen of California and resides in Ridgecrest, California. In September 2020 and again in July 2021, Plaintiff purchased the Product online from Amazon, and it was shipped to her home in Ridgecrest, California. Based on the "Bamboo Sheets" and "Eco Friendly" representations on Amazon.com, Plaintiff reasonably believed that she was buying bamboo sheets that were eco friendly. This belief was an important part of her decision to purchase them. Had Plaintiff known that the sheets were made from viscose and microfiber, and were not eco friendly, she would not have purchased them, or she would have paid less for them. Thus, Plaintiff has suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and deceptive practices, as alleged herein.

11.    Although Plaintiff currently believes that the Products are not eco-friendly bamboo sheets, she cannot trust any of Defendants' representations, and she lacks personal knowledge as to the specific conditions under which Defendants source, manufacture, and package the Products. Therefore, even though Plaintiff would like to continue purchasing the Products, Plaintiff will for the time being refrain from doing so. This is a tangible and ongoing harm to Plaintiff.

**DEFENDANTS**

12.    LuxClub is a New York corporation with its headquarters and principal place of business in Brooklyn, New York. LuxClub, directly and/or through its agents, is responsible for the manufacturing, packaging, marketing, distribution, and sale of the Products in California, including in this District. LuxClub is a bedding company that sells bedding and sheets, including the Products, directly to consumers, and through third-party retailers, such as Amazon and Walmart.

13.    LuxClub and Bold Adventure are jointly and severally liable for the unlawful conduct alleged herein. On information and belief, Bold Adventure is the parent or affiliate of LuxClub, both entities operate as an integrated enterprise, and they are jointly and individually responsible for the unlawful and deceptive advertising that forms the basis of this action.

14.    On information and belief, Mosseri is a citizen of New York. Mosseri is the President, CEO, and/or owner of LuxClub and Bold Adventure. On further information and belief, Mosseri is responsible for the business decisions of LuxClub and Bold Adventure, and each of them,

including but not limited to, the false and deceptive marketing and labeling of the Products that forms the basis of this action.

15.    On information and belief, and at all material times, LuxClub and Bold Adventure have been the alter ego of Mosseri. The factors supporting the alter ego status of the LuxClub and Bold Adventure include but are not limited to the following: Mosseri owns or controls a majority of the shares of LuxClub and Bold Adventure such that there is unity of interests between Mosseri and LuxClub and Bold Adventure; Mosseri dictates the day-to-day business of LuxClub and Bold Adventure and she controls the implementation of company policies and procedures of LuxClub and Bold Adventure; Mosseri improperly disregards the separate corporate form of LuxClub and Bold Adventure, treats the assets of LuxClub and Bold Adventure as her own, and commingles assets with LuxClub and Bold Adventure; and LuxClub and Bold Adventure are undercapitalized, such that it would be inequitable to hold only LuxClub and Bold Adventure liable for the unlawful acts and omissions described herein.

16.    The true names and capacities of Does 1 through 10, inclusive, are unknown to Plaintiff at this time, and Plaintiff therefore sues such Doe defendants under fictitious names. On information and belief, each Defendant designated as a Doe is in some manner highly responsible for the occurrences alleged herein, and Plaintiff's and Class members' injuries and damages, as alleged herein, were proximately caused by the conduct of such Doe defendants. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of such Doe defendants when ascertained.

A.    **The Products' Advertising**

17.    The Products are primarily sold online through LuxClub's e-commerce website and third-party e-commerce websites. Thus, the point-of-sale representations about the Products made on these ecommerce websites are seen by consumers. On information and belief, LuxClub controls the descriptions of the Products made on both its ecommerce website and those of third-party retailers, including the challenged representations in this case.

18.    On Amazon.com, where on information and belief most of the Products are sold, the Products were marketed as "Bamboo" bed sheets that are "Eco Friendly":[1]



19.    As demonstrated below, the Products' packaging also reinforces this deceptive advertising, describing the Products as "LuxClub Bamboo Collection" and the prominent display of bamboo trees:[2]



---

[1] Screenshot taken from Amazon.com in or around March 2023.

[2] Images of bamboo bolsters the representation that that the sheets are made from bamboo.

20.    As noted above, LuxClub only attempted to remove the Products' "Bamboo" marketing and advertising on its website and third-party online retailers after receiving Plaintiff's notice letter under the Consumer Legal Remedies Act.

21.    While LuxClub has apparently made some efforts to scrub the mention of "Bamboo" from its advertising and marketing, it has not removed all of them. For example, searching "LuxClub" on Google.com results in LuxClub's website being the first result, with the title "The Internet's Favorite **Bamboo** Sheets":

CL  LuxClub
    https://www.luxclub.us    ⋮

Luxclub | The Internet's favorite Bamboo Sheets – LuxClub

Discover the epitome of comfort and style with **Luxclub's** exquisite range of bedding and home products. Elevate your living spaces with luxurious comfort and ...

22.    LuxClub has also failed to remove the *Bamboo Representation* on several of its webpages, describing the Products as, for example, "LuxClub Bamboo bedding Collection" which are "allergy free cool bed sheets," without any other form of disclaimer as to the fabric content.[3]

23.    On several of its current webpages, LuxClub has apparently tried to rectify its deception by disclosing the presence of microfiber in the Products, claiming that the Products are a "proprietary blend of Bamboo & Microfiber" which are "hypoallergenic", "Eco Friendly", and

---

[3] https://www.luxclub.us/products/luxclub-4-pc-sheet-set-bed-sheets-deep-pockets-18-eco-friendly-wrinkle-free-sheets-machine-washable-hotel-bedding-silky-soft-butter-twin (last visited May 2, 2024)

"Antibacterial," (*see*, *e.g.*, footnotes [4] [5] [6] [7] [8] [9]). However, the Products do not contain any bamboo fabric, but instead are made from a blend of microfiber and viscose (a term used interchangeably with rayon).[10] As is described in further detail in Section B, viscose/rayon from bamboo, while derived from bamboo, does not contain any bamboo in the end product. Based on this fact, the FTC advises companies not to describe such fabrics as "Bamboo", but rather, "Rayon" or "Rayon from Bamboo," and it further warns companies not to describe the Products as Eco-Friendly given the ecological damage caused by creating rayon/viscose from bamboo.[11] Thus, describing the Products as "bamboo" without a disclosure is deceptive, even if LuxClub now admits its Products contain microfiber.

---

[4] https://www.luxclub.us/products/luxclub-6-pc-queen-sheet-set-breathable-luxury-bed-sheets-deep-pockets-18-eco-friendly-wrinkle-free-cooling-sheets-machine-washable-hotel-bedding-silky-soft-denim-queen

[5] https://www.luxclub.us/products/luxclub-6-pc-full-sheet-set-breathable-luxury-bed-sheets-deep-pockets-18-eco-friendly-wrinkle-free-cooling-bed-sheets-machine-washable-hotel-bedding-silky-soft-denim-full

[6] https://www.luxclub.us/products/luxclub-6-pc-king-sheet-set-breathable-luxury-bed-sheets-deep-pockets-18-wrinkle-free-cooling-bed-sheets-machine-washable-hotel-bedding-silky-soft-light-taupe-king

[7] https://www.luxclub.us/products/luxclub-6-pc-queen-sheet-set-breathable-luxury-bed-sheets-deep-pockets-18-eco-friendly-wrinkle-free-cooling-sheets-machine-washable-hotel-bedding-silky-soft-light-khaki-queen

[8] https://www.luxclub.us/products/luxclub-6-pc-queen-sheet-set-breathable-luxury-bed-sheets-deep-pockets-18-eco-friendly-wrinkle-free-cooling-sheets-machine-washable-hotel-bedding-silky-soft-lime-queen

[9] https://www.luxclub.us/products/luxclub-6-pc-full-sheet-set-breathable-luxury-bed-sheets-deep-pockets-18-eco-friendly-wrinkle-free-cooling-bed-sheets-machine-washable-hotel-bedding-silky-soft-silver-full

[10] https://bthechange.com/how-viscose-rayon-fabric-masquerades-as-bamboo-clothing-b-the-change-media-89f0e3038179

[11] https://www.ftc.gov/system/files/documents/plain-language/alt172-how-avoid-bamboozling-your-customers.pdf

24.    This error is repeated numerous times elsewhere, such as on LuxClub's current webpage, which describes the Products as "Bamboo" approximately seventeen times, and once as a "blend of Bamboo & Microfiber."[12]

25.    Notably, on other webpages, LuxClub currently provides the full distribution of fabrics in the Product (albeit without a disclosure): a "40% bamboo 60% microfiber blend."[13]

26.    While LuxClub has haphazardly attempted, but has failed, to remove all the *Bamboo Representation* from its website, and has removed the *Bamboo Representation* from the third-party online retailers which sell the Products, LuxClub has failed to remove the Products' "Eco Friendly" representation on all of the Products' webpages on the LuxClub website, and Amazon.com, as seen from current webpages:[14] [15]



---

[12] https://www.luxclub.us/products/luxclub-4-pc-sheet-set-bed-sheets-deep-pockets-18-eco-friendly-wrinkle-free-sheets-machine-washable-hotel-bedding-silky-soft-butter-twin

[13] https://www.luxclub.us/products/luxclub-6-pc-queen-sheet-set-breathable-luxury-bed-sheets-deep-pockets-18-eco-friendly-wrinkle-free-cooling-sheets-machine-washable-hotel-bedding-silky-soft-denim-queen

[14] https://www.amazon.com/LuxClub-Friendly-Hypoallergenic-Anti-Bacteria-Washable/dp/B071NPS3TJ?ref_=ast_sto_dp&th=1 (last visited May 1, 2024)

[15] https://www.luxclub.us/collections/sheet-set/products/luxclub-bed-sheets-set-durable-easy-care-fade-shrink-resistant (last visited May 1, 2024)



27.    Not only does LuxClub still describe the Products as "Eco Friendly" on Amazon.com and its website, but LuxClub's marketing only reinforces the belief that the Products are beneficial for the environment, or at the very least are not harmful to the environment, as demonstrated by the banner below from LuxClub's website[16] (outlining added for emphasis):



---

[16] https://www.luxclub.us/ (last accessed June 19, 2024).

FIRST AMENDED CLASS ACTION COMPLAINT

### B.    The Products Are Not Bamboo and Not Eco Friendly

28.    Unbeknownst to consumers, bamboo cannot be manufactured into soft fabrics, such as bed sheets, without extreme, environmentally harmful practices, which in the end results, leave no trace of the original bamboo used in the manufacturing process.

29.    As the Federal Trade Commission ("FTC") explains, "Bamboo that has been processed to make soft fabric *no longer has the same qualities as bamboo*. For example, although a bamboo plant can resist the growth of bacteria, there's no evidence that rayon fabric made from processed bamboo is 'naturally' antibacterial. Real bamboo fabric that may be antibacterial is often rough or scratchy, and is rarely used in fabric you touch, like clothing or *bedding*."[17]

30.    The FTC further explains that, in reality, "Not all bamboo clothing or bedding is what it seems — or what it's advertised to be. When bamboo has been chemically processed into rayon and similar fabrics, ***there's no trace of the original plant left***" and is manufactured using "toxic chemicals."[18] Unfortunately for consumers, the "process of creating  is far from eco-friendly, and the fabric that it creates may not be better for the environment than other types of fabric."[19]

31.    In an article by FTC entitled "How To Avoid Bamboozling Your Customers", the FTC acknowledges that "Marketers looking to provide more environmentally friendly choices to consumers may have heard about bamboo, which has been recognized for its ability to grow quickly with little or no need for pesticides." [20]

32.    The FTC further elaborates that that "most 'bamboo' textile products, if not all, really are rayon, which typically is made using environmentally toxic chemicals in a process that emits hazardous pollutants into the air. While different plants, including bamboo, can be used as a source material to create rayon, there's no trace of the original plant in the finished rayon product […] If

---

[17] https://consumer.ftc.gov/articles/bamboo-fabrics#:~:text=Bamboo%20is%20a%20plant%20that,or%20viscose%20using%20toxic%20chemicals. (emphasis added).

[18] *Id.* (emphasis added).

[19] *Id.*

[20] https://www.ftc.gov/system/files/documents/plain-language/alt172-how-avoid-bamboozling-your-customers.pdf

1  you make, advertise or sell bamboo-based textiles, the Federal Trade Commission, the nation's

2  consumer protection agency, wants you to know that unless a product is made directly with bamboo

3  fiber — often called "mechanically processed bamboo" — it can't be called bamboo. Indeed, to

4  advertise or label a product as "bamboo," you need competent and reliable evidence, such as

5  scientific tests and analyses, to show that it's made of actual bamboo fiber. Relying on other people's

6  claims isn't substantiation. The same standard applies to other claims, like a claim that rayon fibers

7  retain natural antimicrobial properties from the bamboo plant."[21]

8      33.    Indeed, the FTC explains to manufacturers like Defendants how they should market

9  such Products to avoid false and deceptive claims to consumers: "If you sell clothing, linens, or

10 other textile products, you're responsible for making truthful disclosures about the fiber content. If

11 your product isn't made directly of bamboo fiber — but is a manufactured fiber for which bamboo

12 was the plant source — it should be labeled and advertised using the proper generic name for the

13 fiber, such as rayon, or "rayon made from bamboo."[22]

14     34.    Like viscose/rayon from bamboo, microfiber is a highly processed fabric that is

15 harmful to the environment. Multiple scientific studies have concluded that "Microfibers are the

16 most common types of microplastics identified in the ocean […] Microfibers in the ocean, including

17 polyester, acrylic, polypropylene, polyethylene, and polyamide, are widely and mainly used in the

18 textiles and apparel industry."[23] The consensus of the scientific community is that "Microfibers

19 cause a range of damage to marine, freshwater, and soil ecosystems."[24]

20     35.    The FTC "Green Guides" explicitly warn against making "General environmental

21 benefit claims," such as Eco Friendly, when they are not supported by a factual basis.

22     36.    The deceptive nature of unqualified general environmental benefit claims, such as

23 "Eco Friendly" have been addressed by the FTC:

24

25 _____

26 [21] *Id.*

27 [22] *Id.*

[23] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9734713/

28 [24] https://www.sciencedirect.com/science/article/abs/pii/S1532045621002234

Unqualified general environmental benefit claims are difficult to interpret and likely convey a wide range of meanings. In many cases, such claims likely convey that the product, package, or service has specific and far-reaching environmental benefits and may convey that the item or service has no negative environmental impact. Because it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims, marketers should not make unqualified general environmental benefit claims.

16 C.F.R. § 260.4(b).

37.    In fact, the FTC specifically identifies "Eco Friendly" as an example of a representation which "likely conveys that the product has far-reaching environmental benefits and may convey that the product has no negative environmental impact. Because it is highly unlikely that the marketer can substantiate these claims, the use of such a brand name is deceptive."[25]

38.    It is for this reason that the FTC states that companies should "qualify" "general environmental benefit claims" to "prevent deception" about the nature of the environmental benefit being asserted.[26] To avoid deception, marketers should use "clear and prominent qualifying language that limits the claim to a specific benefit or benefits."[27]

39.    As demonstrated above, LuxClub has failed to disclose or make any qualifications that the Products are not eco-friendly, but to the contrary, are environmentally harmful.

**C.    Consumer Demand for Bamboo and Eco Friendly Products**

40.    The purported "bamboo" and "eco friendly" quality of the Products is important to consumers' purchasing decisions (i.e., the representations are material) because bamboo is known to be antimicrobial and environmentally friendly.

---

[25] 16 C.F.R. § 260.4(b) at Ex. 1.

[26] *Id.* § 260.4(c).

[27] *Id.*

41.     The desire to purchase bamboo products has grown significantly in recent years due to consumers who have become increasingly aware of the environmental impact of their purchasing decisions.

42.     Bamboo is eco-friendly because it requires very little water, does not need pesticides or fertilizer, and do not emit toxic chemicals or hazardous pollutants in the manufacturing process, and bamboo releases 35% more oxygen into the air than other trees of the same size.[28] Unfortunately for consumers, Defendants' processing of the original bamboo into viscose is an environmentally destructive process, and results in no bamboo in the end Product.

43.     Consumers want to buy sustainable products, and as a result are willing to pay a premium for products they believe to be "eco-friendly." In fact, "there has been a 71% rise in online searches for sustainable goods globally," demonstrating that consumers are actively seeking out eco-friendly products.[29]

44.     Defendants are taking advantage of consumers' desire to purchase sustainable products by marketing its Products as "Eco-Friendly" and thus commanding a price premium over other products that are accurately labeled.

45.     Simply put, "Consumers are more attracted to brands with sustainable practices and products – and those businesses turn a profit."[30]

46.     Thus, Defendants have deceptively labeled and packaged the Products to target consumer demand for bamboo products.

**CLASS ACTION ALLEGATIONS**

47.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

---

[28]   Laura   Sanders,   Bamboo:   Eco-friendly   fabric   or   environmental   disaster?, https://www.euronews.com/green/2020/11/30/bamboo-eco-friendly-fabric-or-environmental-disaster (last visited March 8, 2023).

[29] https://www.businessnewsdaily.com/15087-consumers-want-sustainable-products.html

[30] *Id.*

**California Class**

All natural persons who purchased at least one of the Products in the State of California through an e-commerce website within the applicable statute of limitations period.

**California Consumer Subclass**

All natural persons who purchased at least one of the Products in the State of California, for personal, family, or household purposes, through an e-commerce website, within the applicable statute of limitations period.

48.    Excluded from the Classes are the following individuals and/or entities: Defendants and any parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

49.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

50.    Plaintiff is a member of both classes.

51.    <u>Numerosity:</u> The proposed Classes are so numerous that joinder of all members would be impractical. Products is sold throughout the United States and the State of California. The number of individuals who purchased Products during the relevant time period is at least in the hundreds. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

52.    <u>Common Questions Predominate:</u> There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

a.    Whether Defendants misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

b. Whether Defendants' use of the challenged marketing, constituted false or deceptive advertising;

c. Whether Defendants engaged in unfair, unlawful and/or fraudulent business practices;

d. Whether Defendants' unlawful conduct, as alleged herein, was intentional and knowing;

e. Whether Plaintiff and the Classes are entitled to damages and/or restitution, and if so, in what amount;

f. Whether Plaintiff and the Classes are entitled to an injunctive relief;

g. Whether Plaintiff and the Classes are entitled to punitive damages, and if so, in what amount; and

h. Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

53.   Defendants have engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff on behalf of the proposed Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendants' deceptive advertising of Products. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of unlawful conduct. Each Class member has been exposed to the same false and deceptive practice, as the point-of-sale claims contain the same material misrepresentations. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

54.   Superiority: Because of the relatively small damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

55.     <u>Typicality</u>: The representative Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendants' uniform unlawful conduct as alleged herein.

56.     <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the proposed Classes as her interests do not conflict with the interests of the members of the proposed Classes she seeks to represent, and she has retained counsel competent and experienced in similar class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and her counsel.

57.     Defendants have also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

## FIRST CLAIM FOR RELIEF
### Violation of California's False Advertising Law
### California Business & Professions Code § 17500, *et seq*
### (*For the Classes*)

58.     Plaintiff repeats the allegations contained in paragraphs 1-57 above as if fully set forth herein.

59.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants pursuant to California's False Adverting Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

60.     The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

61.     Defendants have represented and continue to represent to the public, including Plaintiff and members of the proposed Classes, through its deceptive packaging, that the Products are bamboo sheets and eco-friendly. Because Defendants have disseminated misleading information

regarding the Products, and Defendants knows, knew, or should have known, through the exercise

of reasonable care, that the bamboo and eco-friendly representations are misleading, Defendants

have violated the FAL.

62.    As a result of Defendants' false advertising, Defendants have and continue to

unlawfully obtain money from Plaintiff and members of both Classes. Plaintiff therefore requests

that the Court cause Defendants to restore this fraudulently obtained money to her and members of

the proposed Classes and to disgorge the profits Defendants made on these transactions. Otherwise,

Plaintiff and members of the proposed Classes may be irreparably harmed and/or denied an effective

and complete remedy.

**SECOND CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code § 17200,** *et seq.*
(***For the Classes***)

63.    Plaintiff repeats the allegations contained in paragraphs 1-57 above as if fully set

forth herein.

64.    Plaintiff brings this claim individually and on behalf of the members of the proposed

Classes against Defendants.

65.    The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair

competition shall mean and include unlawful, unfair or fraudulent business practices and unfair,

deceptive, untrue or misleading advertising . . . .".

66.    Under the UCL, a business act or practice is "unlawful" if it violates any established

state or federal law. Defendants' false and misleading advertising of Products was and continues to

be "unlawful" because it violates, *inter alia*, the CLRA and FAL.

67.    In addition, the labeling and advertising of the Products violates the FTC's

regulations and guidelines concerning the marketing and sale of textiles. Specifically, the

advertising and marketing of the Products is subject to the Textile Act and Rules, codified as 16

C.F.R. § 303, *et seq.* (herein the "Textile Act"). Under the Textile Act, a written advertisement for

a textile product "doesn't have to have to mention a product's fiber content,"[31] but if an advertisement does, "it *must* include the required fiber content information with fibers listed in order of predominance by weight." (emphasis added).[32] Importantly, the FTC warns that "[a]ll required fiber information *must appear together* in the ad *in type of the same size and conspicuousness and that is reasonably easy to read*."[33] Indeed, 16 C.F.R. § 303.42 expressly states that "[w]here a textile fiber product is advertised in such manner as to require disclosure of the information required by the Act and regulations, all parts of the required information shall be stated in *immediate conjunction* with each other in legible and conspicuous type or lettering of equal size and prominence."

68.     The FTC provides the following examples of compliant fiber claims made on advertisements:[34]

> "Fine Pima Blend Fabric (Pima Cotton, Upland Cotton)" is permissible in an ad for a product with a label that reads "90% Pima Cotton, 10% Upland Cotton."
>
> "Pimalux Towel (Pima Cotton, Upland Cotton)" is permissible in an ad for a towel with a label that reads "70% Pima Cotton, 30% Upland Cotton."

69.     The FTC also provides an example of a false and deceptive advertising reference to only one type of fiber when the product contains other types of fibers.[35] For example, if the required fiber content statement says "70% Pima Cotton, 30% Upland Cotton," the non-required phrase "Pimalux Towel" must not interfere or detract from it, or be false or deceptive by, for example, falsely implying that the towel is 100% Pima Cotton.

70.     Lastly, as a general matter, "[a]ny reference in an ad to fiber content, including the name of a particular kind of cotton, a cotton trademark or other term implying the presence of a type

---

[31] https://www.ftc.gov/business-guidance/resources/calling-it-cotton-labeling-advertising-cotton-products-0

[32] *Id.*

[33] *Id.*

[34] https://www.ftc.gov/business-guidance/resources/calling-it-cotton-labeling-advertising-cotton-products-0.

[35] *Id.*

of cotton, [or other textile fiber such as bamboo], must not be false, deceptive or misleading as to fiber content."[36] *See also* 16 C.F.R. § 303.41(d) ("Where a fiber trademark or generic name is used in non-required information in advertising, such fiber trademark or generic name, shall not be used in such a manner as to be false, deceptive, or misleading as to fiber content, or to indicate, directly or indirectly, that a textile fiber product is composed wholly or in part of a particular fiber, when such is not the case").[37]

71.    Defendants' labeling and advertising of the Products fail to comply with the foregoing FTC regulations and guidance.

72.    As a result of Defendants' unlawful business acts and practices, Defendants have unlawfully obtained money from Plaintiff, and members of the proposed Classes.

73.    Under the UCL, a business act or practice is "unfair" if the Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendants' conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the advertising. Deceiving consumers into believing the Products are bamboo sheets and eco friendly, when they are not, is of no benefit to consumers. Therefore, Defendants' conduct was and continues to be "unfair." As a result of Defendants' unfair business acts and practices, Defendants have and continue to unfairly obtain money from Plaintiff, and members of the proposed Classes.

74.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendants' conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing Products are bamboo sheets and eco-friendly. Because Defendants misled Plaintiff and members of both Classes, Defendants' conduct was "fraudulent." As a result of Defendants' fraudulent business acts and

---

[36]   https://www.ftc.gov/business-guidance/resources/calling-it-cotton-labeling-advertising-cotton-products-0

[37] *See also* https://www.ftc.gov/business-guidance/resources/threading-your-way-through-labeling-requirements-under-textile-wool-acts ("Other information in the ad can't be false, deceptive or misleading, or include any terms or representations that are prohibited under the statute and rules.")

practices, Defendants have and continue to fraudulently obtain money from Plaintiff and members of the proposed Classes.

75.    Plaintiff requests that the Court cause Defendants to restore this unlawfully, unfairly, and fraudulently obtained money to her, and members of the proposed Classes, and to disgorge the profits Defendants made on these transactions.

**THIRD CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750,** *et seq.*
(***For the California Consumer Subclass***)

76.    Plaintiff repeats the allegations contained in paragraphs 1-57 above as if fully set forth herein.

77.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendants pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

78.    The Products is a "good" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

79.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…" By marketing the Products as bamboo and eco-friendly, LuxClub has represented and continues to represent that the Products have characteristics (i.e., bamboo sheets which are eco friendly) that they do not have. Therefore, Defendants have violated section 1770(a)(5) of the CLRA.

80.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Products as bamboo and eco-friendly, Defendants have represented and continues to represent that the Products are of a particular standard (i.e., bamboo sheets which are eco-friendly) which they do not possess. Therefore, Defendants have violated section 1770(a)(7) of the CLRA.

///

81.     Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Products as eco-friendly bamboo sheets, but not intending to sell Products as such, Defendants have violated section 1770(a)(9) of the CLRA.

82.     At all relevant times, Defendants have known or reasonably should have known that the Products' marketing is false and deceptive, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on it when purchasing the Products. Nonetheless, Defendants persisted in making the false representations to deceive consumers into believing they are buying eco-friendly bamboo sheets, as opposed to Rayon/Viscose/Microfiber sheets, which lack many of the beneficial qualities of bamboo sheets.

83.     Plaintiff and members of the California Consumer Subclass have justifiably relied on Defendants' misleading marketing when purchasing the Products. Moreover, based on the materiality of Defendants' misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of California Consumer Subclass.

84.     Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendants because they would have paid less for the Products, or would not have purchased them, had they known that the bamboo and eco-friendly representations were untrue.

85.     In accordance with Cal. Civ. Code § 1780(d), Plaintiff is filing a declaration of venue, attached as **Exhibit A** to this Complaint.

86.     On September 17, 2021, Plaintiff, by and through her counsel, sent a notice and demand letter by certified mail to LuxClub of her intent to pursue claims under the CLRA, and an opportunity to cure, consistent with Cal. Civ. Code § 1782. LuxClub received this notice and demand letter, but it has not reimbursed Plaintiff, nor to Plaintiff's knowledge has it reimbursed Class members based on the foregoing misrepresentations

87.     Because LuxClub has failed to fully rectify or remedy the damages caused after waiting more than the statutorily required 30 days after LuxClub received the foregoing notice and demand letter, Plaintiff is timely filing this Complaint for damages as permitted under Cal. Civ.

Code § 1782(d). Plaintiff also requests an award of actual and punitive damages, attorneys' fees and costs, and any other relief that the Court deems proper, pursuant to Cal. Civ. Code § 1780(a).

**<u>FOURTH CLAIM FOR RELIEF</u>**
**Breach of Express Warranty**
**California Commercial Code § 2313**
(***For the Classes***)

88.    Plaintiff repeats the allegations contained in paragraphs 1-57 above as if fully set forth herein.

89.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants.

90.    California's express warranty statute provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

91.    Defendants have expressly warranted through the Products' marketing that they are eco-friendly, bamboo sheets.

92.    This representation about the Products is: (a) an affirmation of fact or promise made by Defendants to consumers that Products are bamboo sheets and are eco-friendly; (b) became part of the basis of the bargain to purchase the Products when Plaintiff and other consumers relied on the representation; and (c) created an express warranty that the Products would conform to the affirmation of fact or promise. In the alternative, the representation about the Products is a description of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the Products' description.

93.    Plaintiff and members of the Classes reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties.

94.    Defendants have breached the express warranties made to Plaintiff and members of the proposed Classes by failing to produce the Products in accordance with these representations, as expressly warranted via the marketing.

FIRST AMENDED CLASS ACTION COMPLAINT

95.     Plaintiff and members of the proposed Classes paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of the proposed Classes had known of the true nature of the Products, they would not have been willing to pay the premium price charged in the market, or would not have purchased it at all. As a result, Plaintiff and members of the Classes suffered injury and deserve to recover all damages afforded under the law.

96.     Within a reasonable amount of time after Plaintiff discovered that LuxClub did in fact breach the express warranty, Plaintiff notified LuxClub of the breach. *See supra* ¶ 86.

**<u>FIFTH CLAIM FOR RELIEF</u>**
**Breach of Implied Warranty**
**California Commercial Code § 2314 (2)(f)**
(***For the Classes***)

97.     Plaintiff repeats the allegations contained in paragraphs 1-57 above as if fully set forth herein.

98.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants.

99.     California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

100.     California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) [c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

101.     Defendants are merchants with respect to the sale of the Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

102.     By advertising the Products with its current packaging, Defendants made an implied promise that the Products are bamboo sheets. The Products do not, however, "conform to the promises" made via the Products' marketing and advertising because they are not bamboo sheets, and they are not eco-friendly. Plaintiff, as well as consumers, did not receive the goods as

impliedly warranted by Defendants to be merchantable.

103.    Therefore, the Products are not merchantable under California law and Defendants have breached its implied warranty of merchantability with respect to the Products.

104.    If Plaintiff and members of the Classes had known that the Products were not bamboo sheets, they would not have been willing to pay the premium price associated with them, or would not have purchased them at all. Therefore, as a direct and/or indirect result of Defendants' breach, Plaintiff and members of the Classes have suffered injury and deserve to recover all damages afforded under the law.

105.    Within a reasonable amount of time after Plaintiff discovered that Defendants did in fact breach the implied warranty, Plaintiff notified LuxClub of the breach. *See supra* ¶ 86.

### SIXTH CLAIM FOR RELIEF
**Intentional Misrepresentation**
(***For the Classes***)

106.    Plaintiff repeats the allegations contained in paragraphs 1-55 above as if fully set forth herein.

107.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants.

108.    Defendants marketed the Products in a manner indicating that they are eco-friendly, bamboo sheets.  Therefore, Defendants have made misrepresentations about the Products.

109.    The representations that the Products are eco-friendly, bamboo sheets are material to a reasonable consumer because it relates to the quality of the Products. A reasonable consumer attaches importance to such representations and is induced to act thereon in making purchasing decisions with respect to bedding like the Products.

110.    At all relevant times, Defendants knew that the representations that the Products were eco-friendly, bamboo sheets were misleading. Defendants intend for Plaintiff and other consumers to rely on the representations, as evidenced by Defendants intentionally and conspicuously placing it on the packaging of the Products. In the alternative, Defendants acted recklessly in making the representations without regard to the truth.

111.    Plaintiff and members of the proposed Classes have reasonably and justifiably relied

on Defendants' intentional misrepresentations (i.e., the *Bamboo Representation*) when purchasing the Products, and had the correct facts been known, would not have purchased them at the prices at which they were sold in the market.

112.    Therefore, as a direct and proximate result of Defendants' intentional misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Classes, respectfully prays for following relief:

A.    Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiff as Class representative, and appointment of her counsel as Class counsel;

B.    A declaration that Defendants' actions, as described herein, violate the claims described herein;

C.    An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

D.    An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendants' conduct;

E.    An award of punitive damages;

F.    An award of nominal damages;

G.    An award to Plaintiff and her counsel of reasonable expenses and attorneys' fees;

H.    An award to Plaintiff and the proposed Classes of pre and post-judgment interest, to the extent allowable; and

I.    For such further relief that the Court may deem just and proper.

FIRST AMENDED CLASS ACTION COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and the proposed Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

DATED: July 30, 2024

**THE WAND LAW FIRM, P.C.**

By: /s/ Aubry Wand
       Aubry Wand

**TREEHOUSE LAW, LLP**
Benjamin Heikali
Ruhandy Glezakos
Joshua Nassir

*Attorneys for Plaintiff and the Putative Classes*

FIRST AMENDED CLASS ACTION COMPLAINT